# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:

**Hoku Materials, Inc.,**                     **Bankruptcy Case**
**Hoku Corporation,**                         **No. 13-40837-JDP**

                                              **(substantively consolidated)**


                        **Debtors.**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

David M. Smith, Smith and Company, Idaho Falls, Idaho, Accountant for
Former Trustee, R. Sam Hopkins,

R. Sam Hopkins, Pocatello, Idaho, Former Trustee,

Robert Maynes, MAYNES TAGGART, PPLC, Idaho Falls, Idaho, Attorney
for former Trustee R. Sam. Hopkins.

Jason Naess, PARSON, SMITH, STONE, LOVELAND, SHIRLEY, Burley,
Idaho, Attorney for Gary Rainsdon, Trustee,

MEMORANDUM OF DECISION – 1

J. Ford Elsaesser, ELSAESSER, JARZABEK, ANDERSON, ELLIOTT & MACDONALD, CHTD, Sandpoint, Idaho, Attorney for JH Kelly LLC,

Mary Kimmel, Boise, Idaho, Attorney for U.S. Trustee.

### *Introduction*

On October 13, 2016, an "Application for Compensation for Smith and Company as Accounting and Financial Expert for Chapter 7[1] Trustee [R. Sam Hopkins]" was filed requesting approval for $27,843.30 in professional's fees for services ("the Final Fee Application").  Dkt. No. 703.[2]  On November 1, 2016, Gary L. Rainsdon ("Trustee"), chapter 7 trustee for the now substantively consolidated cases of Hoku Materials, Inc. ("Materials") and Hoku Corporation ("Corporation"), objected to the application.  Dkt. No. 708.  On November 4, 2016, JH Kelly LLC, a creditor in the consolidated cases, joined in the objection.  Dkt. No. 720.  On

---

[1] Unless otherwise indicated, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86, and all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[2] No expense reimbursement was requested.

MEMORANDUM OF DECISION – 2

December 5, 2016, the U.S. Trustee filed a response to the Final Fee Application indicating it had no objection to approval of the requested compensation.  Dkt. No. 735.

On December 12, 2016, the Court conducted a hearing concerning the Application.  Dkt. No. 744.  Accountant David Smith appeared on behalf of Smith & Company, PLLC ("Company"), as did counsel for the U.S. Trustee, Trustee, and JH Kelly.  After arguments by the parties, the Court took the Final Fee Application under advisement.  Having considered the parties' briefs and arguments, as well as the applicable law, this Memorandum sets forth the Court's findings, conclusions, and reasons for its disposition of the Final Fee Application.  Rules 7052; 9014.

### Facts

### 1.    Employment of Smith and Company

On September 2, 2015, R. Sam Hopkins, then serving as  chapter 7 trustee in the Hoku Corporation case, filed an "Application to Employ Smith & Company, PLLC as Accounting and Financial Expert" (the "Employment Application").  *In re Hoku Corp.*, Case No. 13-40838-JDP,

MEMORANDUM OF DECISION – 3

Dkt. No. 464.  In the Employment Application, Hopkins represented that,

as trustee, he had, through his counsel, commenced a large number of

adversary complaints seeking to avoid alleged transfers by Corporation to

other parties, and that he needed an accounting and financial expert to

advise him and his counsel on matters which may arise in prosecuting

those actions and otherwise in the administration of the bankruptcy estate.

*Id.* at 2.  Indeed, Hopkins was pursuing almost 200 avoidance actions, and

in response, many of the targets of those actions had asked the Court to

substantively consolidate the cases of Corporation and Materials.  *See In re*

*Hoku Corp.*, Motion to Consolidate, July 28, 2015, Dkt. No. 412.  The

Employment Application disclosed that Company would seek

compensation at an hourly rate of $267.00 for Smith's services.[3]  *Hoku*

*Corp.*, Dkt. No. 464 at 2.  It also indicated that Smith may use the services

of others employed by Company whose hourly rate may be different.  *Id.*

---

[3]  While the rate originally requested was $260.00 per hour with additional
overhead expenses charged at $7.00 per hour, the Court later indicated it was
unnecessary to itemize the overhead expense.  *See In re Hoku Corp.*, Dkt. No. 707
at Minute Entry.  The Application's supporting invoices utilize a consolidated
rate of $267.00.  Dkt. No. 703 at 5-6.

MEMORANDUM OF DECISION – 4

at 2.  The Employment Application explained that Company was selected

due to Smith's extensive experience with accounting, auditing, tax and

business consulting, and his professional focus on forensic accounting.  *Id.*

at 3.  Additionally, it indicated Company was employed because Smith is

certified for valuation analysis and fraud examination, is a master analyst

in financial forensics, is accredited in business appraisal review, is certified

in machinery and equipment appraisal, and was well qualified to provide

expert litigation services.  *Id.* at 3.[4]

     According to the Employment Application, Company was tasked to

review Corporation and its affiliates' financial records, historical reports,

and underlying financial data.  *Id.* at 3.  Smith was also to provide any trial

and deposition testimony and other expert witness services that Hopkins

required.  *Id.* at 4.[5]

---

     [4] The following acronyms followed Smith's name in the application:
CPA/ABV/CFF, CVA, CFE, MAFF, ABAR, CMEA.  His curriculum vitae was
attached to the application.  *In re Hoku Corp.*, Dkt. No. 464 at Ex. B.

     [5] An engagement letter between Smith and Hopkins' counsel was also
attached to the application.  *In re Hoku Corp.*, Dkt. No. 464 at Ex. A.

MEMORANDUM OF DECISION – 5

After appropriate notice, no party objected to the Employment

Application, and on October 7, 2015, the Court entered an order approving

the employment of Company, and approved payment of the retainer of

$8,500 that was requested in the Employment Application.  *In re Hoku*

*Corp.*, Dkt. No. 536.

### 2.    Interim Fee Application and Continued Work

On February 12, 2016, through counsel, Hopkins filed an

Application for Interim Professional Compensation for Smith and

Company for $9,321.97 (the "Interim Fee Application").  *In re Hoku Corp.*,

Dkt. No. 681.  Invoices submitted with the Interim Fee Application billed

for time spent by Smith to locate, store, and upload various documents

into his computer system; to examine various reports; to meet with

Hopkins' counsel; and to develop a report.  *In re Hoku Corp.*, Dkt. No. 682

at 4-6.  While most of the time entries were billed at the disclosed rate, one

entry, entitled "locate and store industry outlook", was billed at $87.00 per

MEMORANDUM OF DECISION – 6

hour,[6] and another entry, entitled "Lexbe eDiscovery Platform" was billed

at $199.00.  *Id.*  The Interim Fee Application provided no further

explanation for these two entries.  *Id.*

There were no objections to the Interim Fee Application, and after a

March 9, 2016 hearing, on March 10, 2016, the Court entered an order

approving the Interim Fee Application in the amount requested, and

authorizing Company to apply the $8,500 retainer, with the remainder to

be paid at Hopkins' discretion.  *In re Hoku Corp.*, Dkt. No. 710 at 1.  The

order indicated that, as an interim award, the amounts approved for

Company's compensation were subject to reconsideration later in the case.

*Id.* at 1–2; *see* § 331.

### 3.    The Final Fee Application

While Hopkins was actively pursuing the avoidance actions, the

Court stayed prosecution of them in light of the pending substantive

consolidation motion.  Therefore, most of Company's services and Smith's

---

[6] This rate includes the $7.00 per hour overhead expense charge that was billed separately in the Interim Application.

MEMORANDUM OF DECISION – 7

time reflected in the Final Fee Application now under review were

expended providing support for Hopkins' decision to vigorously defend

against the consolidation request made by several dozen parties in the

bankruptcy cases.

In particular, invoices submitted with the Final Fee Application

provide that both prior to, and during the pendency of the Interim

Application, Company continued to bill time in January and February

2015.  Dkt. No. 703 at 5.  A large portion of the time billed was at $87.00

per hour for tasks such as evaluating data from, and uploading documents

to, accounting software programs.  *Id.*  Again, the Final Fee Application

does not explain the difference in rate.  *Id.*  But at the hearing on the Final

Fee Application, Smith explained that the $87.00 per hour rate was billed

for services provided by Company employees that are not certified as

accountants, but who have a college degree in accounting.  He further

explained that only an individual with a degree in accounting could have

performed these services.

The time billed at the $267.00 per hour rate during January and

MEMORANDUM OF DECISION – 8

February included time spent examining and working with files obtained

from Corporation's former accounting firm, attempting to navigate the

password protection in the Hoku entities' Quickbooks records, examining

ledgers, and drafting an affidavit. *Id.*

### a.    Expert Reports

While much of the time Company billed for developing Smith's

report was included in the Interim Fee Application, the majority of time

billed at the end of February 2016 was for Smith's meeting with Hopkins'

attorneys, and for making additions to his first expert report submitted on

March 1, 2016, in the substantive consolidation litigation. *Id.* at 6; *In re*

*Hoku Corp.*, Dkt. No. 702. After receiving the moving parties' expert

witness report, Company billed several hours in March for Smith's

preparation of his rebuttal report, filed on March 31, 2016. Dkt. No. 703 at

6.; *In re Hoku Corp.*, Dkt. No. 722.

### b.    The Deposition, the Substantive Consolidation Hearing, and the Court's Decision.

In April 2016, Company billed several hours for Smith's preparation

MEMORANDUM OF DECISION – 9

for and participation in a deposition. Dkt. No. 703 at 6. Then, in May and June, Company billed time for Smith to prepare for and attend the multi-day evidentiary hearing on the substantive consolidation motion, during which he testified as an expert witness. *Id.*

Following the hearing, on September 27, 2016, the Court rendered a lengthy oral decision on the motion for substantive consolidation via a telephonic hearing. Dkt. No. 691. Company billed five and a half hours for Smith to participate in this call. Dkt. No. 703 at 6. The Court granted the Motion for Substantive Consolidation, and ordered the Corporation and Materials cases substantively consolidated. Dkt. Nos. 691, 692.

The Court's decision was based, in part, on its findings that the financial and other business affairs of Corporation and Materials were so intertwined and entangled that an accurate identification, characterization, and allocation of their assets, debt, and financial transactions was not possible. Oral Hr'g Tr. at 158:2–12, Dkt. No. 696. If it were possible to "unscramble the books", the Court concluded that the time and expense necessary to do so could potentially consume all available assets in the

MEMORANDUM OF DECISION – 10

cases. *Id.* at 158:2–12.

In reaching its conclusions, the Court occasionally relied on Smith's testimony from the hearing. *Id.* at 161:21–25, 162:6–9, 165:3-6. However, the Court disagreed with Smith's ultimate conclusions,[7] assigning much more evidentiary weight to the opposing expert witness's testimony. *Id.* at 164:18–20. The Court weighed the evidence in this fashion partly due to Smith's inability to offer the same depth of analysis and opinions as the opposing expert witness on critical financial and accounting issues, primarily because the scope of Smith's employment had been limited by Hopkins and his attorneys. *Id.* at 164:20–24 (noting that Smith was retained solely to determine whether, from the information given to him, he could construct a "balance sheet" for Corporation); *see also* 163:4-7 (noting that Smith stated he was not looking for certain information because he was not retained to do so). The Court discounted Smith's

---

[7] Oral Hr'g Tr. at 162:10–16 (disagreeing with Smith's conclusion that he could accurately characterize certain transfers without locating the source documents); 164:11–15 (doubting Smith's estimate of the time and cost to untangle the Hoku entities' financial affairs).

MEMORANDUM OF DECISION – 11

testimony also because he had incorrectly assumed disentanglement of the

entities' affairs could be accomplished through means that the Court

decided were likely to be inaccurate, or too costly.  *Id.* at 162:10–12

(disagreeing with Smith's belief that locating the source documents was

unnecessary to develop an accurate balance sheet); *Id.* at 165:3–6 (noting

Smith's testimony that untangling the entities' affairs would require

certain assumptions or court rulings).

Smith indicated at the hearing on the Final Fee Application that he

had little contact with Hopkins or his counsel following the Court's

decision to consolidate the bankruptcy cases.  Company did not bill any

more time on the engagement.

### *Analysis and Disposition*

### 1.    Legal Standard for Approval of Estate Professional Fees

Section 330(a)(1) provides that the Court may award "reasonable

compensation for actual, necessary services rendered" by an estate

professional employed under § 327, and any paraprofessional working for

the professional.  Under § 330(a)(2), the Court may award less than the

MEMORANDUM OF DECISION – 12

amount requested by the professional.

In determining the amount to be awarded, the Court must consider the nature, extent, and value of the services provided and take into account all relevant factors, including the following:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3). The Code instructs the bankruptcy court to disallow any compensation for services that were not "reasonably likely to benefit the debtor's estate," or that were not "necessary to the administration of the estate." § 330(a)(4). In making a fee award, bankruptcy courts should consider the circumstances of the case, and the manner in which

MEMORANDUM OF DECISION – 13

professional services were performed, as well as the results achieved.

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet MPC Corp.)*, 251 B.R. 103, 108 (9th Cir. BAP 2000).

The "professional bears the burden of proving entitlement to the fees and costs requested under § 330(a)." *In re Walker Land & Cattle, LLC*, 535 B.R. 348, 352 (Bankr. D. Idaho 2015). However, when determining whether the services were actual and necessary,"a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered." *In re Mednet*, 251 B.R. at 108; *In re A.W. Logging, Inc.*, 356 B.R. 506, 515 (Bankr. D. Idaho 2006). Thus, while it is a relevant factor, § 330(a) "does not require that the services result in a material benefit to the estate in order for the professional to be compensated." *In re Mednet*, 251 B.R. at 108.

### 2.    The Parties' Arguments

Trustee argues that the fees sought in the Final Fee Application should be denied because they were incurred, for the most part, to support Hopkins' opposition to substantive consolidation, which, to Trustee, was a

MEMORANDUM OF DECISION – 14

flawed strategy.  Therefore, Trustee argues, Company's services were in

large part not reasonable and necessary to the administration of the Hoku

Corporation estate.  Trustee's Obj. at 1, Dkt. No. 708.   To Trustee, because

the Court eventually concluded that substantive consolidation of the Hoku

cases was required due to the tangled web of the debtor-companies'

finances, and would otherwise be beneficial to all creditors, Hopkins'

efforts to oppose it were actually detrimental to creditors of the Hoku

estates.  *Id.* at 6.

Trustee further contends that incurring the accounting fees in this

case was not an exercise of reasonable billing judgment, because the

limited scope of the accountant's  engagement effectively prevented Smith

from rendering a proper, plausible expert opinion.  *Id.* at 6–7.  Because of

this, Trustee argues, the accountant's services were not reasonably likely to

benefit the estate.  *Id.* at 7.  Trustee argues a lack of reasonable billing

judgment is further evidenced by the fact Company's fees were incurred

when the Corporation bankruptcy estate was administratively insolvent.

*Id.*

MEMORANDUM OF DECISION – 15

Finally, Trustee objects to the rates charged by Company. Trustee's Obj. at 8. He argues that it is impossible to determine whether they are reasonable because no evidence was offered to show the customary rates for comparably skilled accountants practicing outside of bankruptcy. *Id.* Moreover, Trustee takes issue with the four different rates charged in the Final Fee Application because there was no explanation for the differences. *Id.* For these reasons, Trustee urges the Court to deny any further compensation to Company.

JH Kelly joins in Trustee's objection. Dkt. No. 720. However, in addition to denial of the fees requested by Company in the Final Fee Application, JH Kelly requests that the Court reconsider and order Company to disgorge the $9,312.97 previously awarded for the Interim Fee Application. JH Kelly's Joinder at 2, Dkt. No. 720. It argues that those fees were also not reasonably and necessarily incurred in the administration of the Corporation case, because they, too, were incurred in assisting Hopkins in prosecuting what turned out to be groundless adversary proceedings.

MEMORANDUM OF DECISION – 16

*Id.*[8]

While Company did not file a written response to the objections, at

the hearing, Smith argued that the requested fees should be approved

because Company did what it was hired by Hopkins to do, and performed

as effectively and efficiently as possible, subject to the limitation on its

engagement.  Smith acknowledged that he could have done more work

had his engagement not been limited, but, perhaps to hold down costs,

Hopkins and his counsel did not ask him to do so.  Smith also argued that

Company's right to compensation should not be tied to the success, or

eventual lack thereof, in Trustee's efforts to oppose substantive

consolidation motion.  At bottom, Smith felt Company's services were

competent and beneficial at the time they were performed.

As for the varying rates, Smith argued that his rate, and the others

billed in the Final Fee Application, were based on the education and skill

---

[8] Based largely upon the Court's decision to substantively consolidate the cases, Trustee has sought dismissal of the Hopkins avoidance actions.  *See* Amended Motion to Approve Trustee's Future Dismissal of Wrong-Payor Causes of Action, Dkt. No. 712, and the Order granting this motion, Dkt. No. 749.

MEMORANDUM OF DECISION – 17

of Smith and his employees conformed to the standards of the American

Institute of Certified Public Accountants, and were actually modest

compared to other rates being charged by accountants locally.  He also

explained Company charged varying rates as to avoid charging "partner"

time for all the services performed.

### 3.    Opposition to Substantive Consolidation

As noted above, the objectors first make a broadside attack on

awarding the fees.  They do not target particular time entries or services,

but instead assail the propriety of Company's efforts in total.  In effect,

Trustee and JH Kelly do not challenge the "reasonableness" or competency

of Company's work.  Rather, they challenge, retrospectively, Company's

decision to support Hopkins' efforts to oppose consolidation.  Because

they urge that Hopkins was unlikely to be able to resist substantive

consolidation of the cases, they argue that all services rendered by

Company to support Hopkins' position, were not reasonably likely to

benefit, nor necessary to the administration of, the estate.

The Court declines the objectors' invitation to use the Final Fee

MEMORANDUM OF DECISION – 18

Application as a vehicle, as they would, to reprimand Hopkins and his

lawyers, and to punish his accountant, for Hopkins' litigation strategies.

The Court disagrees that Company should not be compensated simply

because the litigation its services were utilized to support was, to the

objectors, unwise.  A bankruptcy trustee's accountant should not be

penalized for refusing to question what amounts to purely legal judgments

of a trustee and his lawyers.  Based upon the Court's review of the

circumstances in this case, the Court will not reject the fee request solely

because of the unsatisfactory outcome of Hopkins' litigation.  Rather, the

Court will examine the benefit Company's accounting and expert witness

services provided Hopkins prior to and throughout the course of the

accountant's engagement.  Viewed through this lense, the Court concludes

that nearly all of the services provided by Company benefitted the

Corporation bankruptcy estate at the time those services were provided.[9]

---

[9]  To be clear, as reflected in its oral decision ordering substantive
consolidation, the Court is concerned that the litigation decisions made by
Hopkins and his attorneys were, at least in part, less than prudent and
appropriate.  Oral. Hr'g Tr. at 18:17–19:5 (noting Hopkins knew the adversary
defendants may seek substantive consolidation of the cases prior to filing the

MEMORANDUM OF DECISION – 19

### 4.     Reasonableness

Company was employed to determine, given Corporation's financial

relationship with Materials, if a separate "balance sheet" could be

developed for Corporation.  According to Hopkins and his lawyers, if

Company could construct such a separate statement, it would be strong

evidence to show that the grounds for substantive consolidation of

Corporation and Materials was not justified.

To answer this question Smith and his associates attempted to

automate the process of searching through the companies' massive

amounts of financial data, attempted to gain access to password protected

information that was relevant to the inquiry, and then examined and

analyzed the resulting information and data.  Smith then provided his

conclusions and findings to Hopkins and his counsel.  The Court

concludes that Company's accounting services were necessary for

_____

adversary cases); 174:13–25 (stating that given the information that has come to
light, succeeding in the adversaries may be difficult).  The Court's concerns may
be revisited when it reviews the final fee applications of Hopkins and his
counsel.

MEMORANDUM OF DECISION – 20

Hopkins, as the trustee of the Corporation estate, and his counsel, to determine whether he should continue to pursue the adversary proceedings, and more importantly, to oppose the motion for substantive consolidation.  In consultation with his counsel, Hopkins apparently decided to do so.

Following Hopkins' decision, Company provided the accounting and expert witness services necessary to support Hopkins in the substantive consolidation litigation.  Smith provided an expert report, a rebuttal report, deposition testimony, and he prepared for and testified at the evidentiary hearing.  Viewed in context, these services were necessary and beneficial to Hopkins' administration of the estate.

Although the Court generally rejects the argument that the Court should disallow all fees to Company, the Court does find that the five and a half hours billed for Smith to listen to the Court's oral disposition was not necessary or beneficial to the Corporation estate.  While the Court understands why Smith may have been interested in the outcome of the litigation in which he participated, Hopkins and his attorneys could have

MEMORANDUM OF DECISION – 21

provided Company with a summary of the Court's decision, and since there was no indication that Smith was asked to consult with Hopkins about appealing the Court's decision, the Court concludes Company has not shown that it provided beneficial accounting or expert services to the estate by Smith listening to the Court's decision. Accordingly, the fee request will be reduced to reflect disallowance of the five and a half hours of time billed to listen to the Court's oral decision.

### 5.   Appropriate Billing Judgment

The objectors argue Company did not exercise reasonable billing judgment because its scope of employment was so strictly limited that its work and Smith's testimony were never reasonably likely to benefit the estate. Indeed, they observe, Smith ultimately attempted to testify about matters which were clearly beyond the scope of what he was hired to do. The Court disagrees with this argument.

It is true that the persuasive value of Smith's testimony at the hearing was constrained by the limited scope of Company's employment as compared to the larger issues being litigated in connection with the

MEMORANDUM OF DECISION – 22

substantive consolidation motion.  However, again, this reality was not

Company's doing, but was likely the product of decisions made by

Hopkins and his counsel.  Company competently did what it was hired to

do, and from what the Court can tell, given the complexity of the task,

made a commendable effort to do so under the circumstances.  Indeed, the

Court relied on portions of Smith's testimony to support its decision.

And while the Court ultimately gave less weight to Smith's

testimony, it did not do so largely because of Smith's lack of depth in

analyzing the facts under Company's limited scope of employment, and

because the Court disagreed with several of the fundamental assumptions

Smith had relied upon in his analysis.  Though the Court disagreed with

Smith's conclusions in several respects, that is not a basis to deny its fees.[10]

---

[10] To the Court, the situation here is analogous to that in which the Court
is asked to consider the opinions rendered by two real estate appraisers, one
employed by a trustee who concludes that a sales comparison approach is the
best method to valuing the subject property, and the other, employed by
trustee's opponent, who concludes an income approach to valuation is more
appropriate.  That the Court ultimately relies upon the non-trustee expert's view
does not render the services provided by the trustee's appraiser unreasonable,
not beneficial, or unnecessary.

MEMORANDUM OF DECISION – 23

Trustee further argues Company did not exercise appropriate billing judgment because the services were provided and billed at a time that the Corporation estate was administratively insolvent. Again, the Court is not persuaded by this argument. Smith was likely unaware of the solvency of the bankruptcy estate, and the Court declines to assign him the duty of making that determination as a condition of following its client's instructions. Moreover, as a practical and ethical matter, estate professionals, including trustees, must occasionally provide services in an administratively insolvent estate at the risk that there will be no funds available to pay them. But that there is a potential shortfall of estate funds to pay professionals is no reason to simply deny fees to those professionals.

### 5.    Billing Rates

Finally, the objectors argue the fees requested should not be awarded because Company provided insufficient evidence to show that the rates billed are reasonable based on the customary compensation charged by comparably skilled accountants in cases outside of bankruptcy.

MEMORANDUM OF DECISION – 24

*See* § 330(a)(3)(F).  They further argue that any time billed at rates other than the $267.00 per hour should be denied because Company did not provide an adequate explanation for the difference in rates.

Despite carrying the burden to establish its entitlement to the fees for the services provided, it is correct that Company provided no information to the Court regarding comparable customary rates of compensation for those services.  While Smith personally stated at the hearing that his rate was in accordance with professional guidelines, he did not submit those guidelines to the Court.

However, the lack of such information is not fatal to Company's fee request.  In the absence of evidence, the Court may rely upon its own experience and knowledge about compensation rates gained from the hundreds of accountant fee applications it is called upon to review in presiding over thousands of bankruptcy cases.  *IMG Transp., L.L.C. v. Warfield (In re IMG Transp., L.L.C.)*, 2012 WL 695019, at *4 (9th Cir. BAP Mar. 5, 2012) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).  Based on that experience and knowledge, the Court concludes that rates of

MEMORANDUM OF DECISION – 25

$200 per hour are at the high end of fees charged by accountants locally.

Because of this, the Court declines to award Company's $267.00 per hour

rate for its services. However, given Smith's extensive accreditation and

certifications, the Court finds he qualifies for a rate on the higher end of

the spectrum of accountant's fees. For these reasons, the Court will adjust

Smith's rate down to $215.00 per hour for his general services, and $250.00

per hour for his time spent testifying during the deposition or at the

hearing.

As for the differing rates used in the applications, while it is less

than clear, the Court finds that Smith provided an adequate explanation

for the occasional use of the $87.00 per hour rate for non-certified

accountant services, and the Court awards any fees billed at that rate. The

Court appreciates Company's decision to utilize less qualified associates,

billed at lower rates, to perform tasks that did not require Smith's

professional expertise. The Court is also satisfied with Smith's assertions

that the tasks billed at this rate required the individuals to have accounting

degrees, and could not have been performed by nonprofessional office

MEMORANDUM OF DECISION – 26

staff.

Finally, the Court finds that the entries billed at the $199.00 rate are

not adequately explained; it will not award any fees billed at that rate.  The

Court surmises these entries may reflect a monthly expense for the "Lexbe

eDiscovery Platform," but if that is so, the charges should have been

identified as such, and accompanied with an explanation of why that

charge should not simply be included in professional's overhead.  For the

same reason the Court declines to approve the "Intuit password Recovery

Tech Support" entry billed for $250.00 in the Final Fee Application.

### 6.    Final Fee Calculations

Between the Interim Fee Application and the Final Fee Application,

Company has requested a total of $37,165.27 in fees.[11]  Of that total,

$32,814.30 was for 122.9 hours billed at the $267.00 per hour rate.  Of the

hours billed at this rate, the Court declines to approve fees for the five and

a half hours billed for listening to the Court's oral ruling, reduces the rate

---

[11] Smith and Company requested $9,321.97 in fees in the Interim Fee
Application, *Hoku Corp.*, Dkt. No. 682, and $27,843.30 in fees in the Final Fee
Application, Dkt. No. 703.  No expenses were requested.

MEMORANDUM OF DECISION – 27

charged for the time Smith spent testifying at his deposition and the hearing to $250.00 per hour, and reduces the rate charged for the remaining hours to $215.00 per hour.  Thus, the Court will award fees for 106.4 hours billed at $215.00 per hour, and 11 hours[12] billed at $250.00 per hour.  Thus, the Court approves $25,626.00 of the fees requested for the time billed at the $267.00 rate.

As to the 26.5 hours billed at the $87.00 per hour rate, the Court will approve them in full for a total of $2,305.50.  However, the Court declines to approve $1,791.00 of the fees requested for the "Lexbe eDiscovery Platform" entries billed at $199.00 per month, and declines to approve $250.00 for the "Intuit password Recovery Tech Support" entry.  This results in another $2,041.00 reduction, which brings the total reduction of the fees requested to $9,229.30.

/ / /

### Conclusion

_____

[12] This total is the sum of hours billed on April 26, 2016, for Smith's deposition and June 3, 2016, for Smith's testimony at the hearing on substantive consolidation.

MEMORANDUM OF DECISION – 28

For the reasons explained above, the Final Fee Application is granted in part and denied in part.  The Court approves a total of $27,935.97 for fees for Company.  As the Court previously authorized payment to Company of $9,321.97, the Court approves an additional $18,614.00 payment, at the discretion of Trustee, or upon further order of the Court.

A separate order will be entered.

Dated:  February 1, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 29